UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FILIBERTO GONZALEZ-VILLANUEVA,<br><br>Defendant. | Case No.:  15cr2224<br><br>**ORDER DENYING DEFENDANT'S MOTION TO RECONSIDER AND § 1326(d) MOTION TO DISMISS** |
|---|---|

On November 23, 2015, Defendant Filiberto Gonzalez-Villanueva ("Gonzalez") filed a motion to dismiss pursuant to 8 U.S.C. § 1326(d). (ECF No. 22.) Gonzalez's motion attacks a 1999 Immigration Judge ("IJ") removal order and a 2005 administrative removal order. On April 22, 2016, Gonzalez filed a motion for reconsideration regarding the Court's factual findings.[1] For the reasons discussed below, Gonzalez's motion to dismiss and motion for reconsideration are **DENIED.**

//

---

[1] The Court found as fact that Gonzalez did not adjust from temporary to permanent residency status. (ECF No. 42.) Gonzalez requested that the Court reconsider. (See ECF No. 45.) The Court interprets this request as a motion for reconsideration.

1

# I. FACTUAL BACKGROUND

Gonzalez was born in Mexico in 1973 and traveled to the United States in 1980. Although many of Gonzalez's family members obtained permanent residency status, the Court found as a fact that Gonzalez never adjusted from temporary to permanent residency status. (See Findings of Fact, Apr. 1, 2016, ECF No. 42.)

Gonzalez was arrested on February 9, 1990, for assaulting a person with a firearm, and sentenced in May 1990 to three years in the California Youth Authority. On September 21, 1999, Gonzalez was stopped at the San Ysidro Port of Entry. Gonzalez declared that he was a United States citizen, but after further questioning, he was detained as an inadmissible alien. Gonzalez was charged under INA § 212(a)(6)(C)(ii) as being an alien who falsely represented himself as a citizen of the United States, and under INA § 212(a)(7)(A)(i)(I) as being inadmissible as an alien not in possession of valid documents.[2] Gonzalez appeared before an IJ for a hearing.

At the 1999 removal hearing, the IJ found that Gonzalez was removable as charged and ineligible for relief. The IJ issued a removal order, thereby ordering Gonzalez be removed to Mexico. The record is clear that the IJ never mentioned withdrawal of application as a potential form of relief from removal.

In 2001 Gonzalez was convicted for, inter alia, possession of cocaine for sale in violation of California Health and Safety Code ("H&S") § 11351 and was sentenced to seven years imprisonment. In 2005, Gonzalez was discovered by the Immigration and Naturalization Service while in prison. He was placed in the administrative removal process, and was ordered removed on the ground that he

---

[2] Gonzalez was also charged under INA § 212(a)(2)(A)(i)(I) as an alien who had been convicted of a crime involving moral turpitude. However, the Government conceded that Gonzalez's juvenile conviction was not a crime within the meaning of the immigration laws. (See Resp. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 25, at 7 n.6.)

1 had a prior aggravated felony conviction.

2 In July 2015 Gonzalez was arrested near Chula Vista, California, and
3 charged pursuant to 8 U.S.C. § 1326. Gonzalez filed a motion to dismiss on
4 November 23, 2015, attacking the validity of both the 1999 IJ removal order and
5 the 2005 administrative removal order. In his supplemental briefing, Gonzalez
6 also moved for reconsideration of the Court's factual finding that Gonzalez never
7 obtained legal permanent resident status.

## II. MOTION FOR RECONSIDERATION

10 Gonzalez requests that the Court reconsider its factual finding regarding
11 Gonzalez's legal permanent resident ("LPR") status. The Court questioned at oral
12 argument whether Gonzalez was in custody when his other family members
13 applied for adjustment of status. Gonzalez now submits his RAP sheet, which
14 allegedly demonstrates that Gonzalez was released at the time his family
15 applied. (See Further Supplemental Briefing, ECF No. 44, at 3.) The Court's
16 finding that Gonzalez never obtained LPR status remains unaffected even if
17 Gonzalez was not in custody when his family applied for adjustment of status.

18 Also, Gonzalez again draws attention to the INS counsel's assertion that
19 Gonzalez obtained LPR status in 1988. However, the Court already found as fact
20 that the INS counsel was mistaken, and that the date in 1988 corresponded with
21 the date Gonzalez's application for temporary residence was granted.

22 For these reasons, and those stated in the Court's Findings of Fact,
23 Gonzalez's motion for reconsideration is **DENIED**.

## III. MOTION TO DISMISS

26 Gonzalez attacks both the 1999 IJ removal order and the 2005
27 administrative removal order. Gonzalez argues that the 1999 IJ removal order
28 was fundamentally unfair because he was never informed of his eligibility to

withdraw his application for admission. Next, Gonzalez argues that the 2005 administrative removal order is invalid because his California conviction under H&S § 11351 does not amount to an aggravated felony within the meaning of the INA. Each argument is discussed in turn.

**A.   1999 IJ Removal Order**

To attack the validity of a deportation order, a defendant must show that: (1) he "exhausted any administrative remedies that may have been available;" (2) "the deportation proceeding at which the order was issued improperly deprived [him] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

*1.   Administrative Exhaustion and Judicial Review*

An IJ must provide an alien with accurate information regarding the alien's apparent eligibility to apply for certain forms of discretionary relief. See United States v. Vidal-Mendoza, 705 F.3d 1012, 1017 (9th Cir. 2013). In the event an IJ fails to provide such information, the alien is excused from demonstrating that he exhausted any administrative remedies. Id. at 1015. Moreover, the same error deprives an alien of the opportunity for judicial relief "because an alien who is not made aware of his or her apparent eligibility for relief . . . has had no meaningful opportunity to appeal the removal and seek such relief." Id. (internal quotations and citations omitted).

In general, an alien "may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). Here, the record is clear that the IJ never informed Gonzalez of his apparent eligibility to withdraw his application for admission. Therefore, Gonzalez need not demonstrate that he exhausted administrative remedies or sought judicial review.

//

### 2. *Fundamental Unfairness*

An underlying removal order is fundamentally unfair if the defendant was "removed when he should not have been." United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006). To prove fundamental unfairness, a defendant must show that (a) the defects at the removal proceedings deprived him of due process, and (b) that he consequently suffered prejudice. See United States v. Barajas-Alvarado, 655 F.3d 1077, 1085 (9th Cir. 2011).

#### **(a) Due Process**

As discussed above, the IJ never informed Gonzalez of his apparent eligibility to withdraw his application for admission. "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004) (internal quotations and citation omitted). Thus, failing to mention withdrawal of application as an apparent remedy violated Gonzalez's due process rights.

#### **(b) Prejudice**

To establish prejudice, a defendant must show that he had plausible grounds for relief from the removal order. See United States v. Raya-Vaca, 771 F.3d 1195, 1206 (9th Cir. 2014). Here, Gonzalez argues that he had a plausible opportunity to withdraw his application for admission.[3]

According to the regulations, an IJ may allow an arriving alien to withdraw an application for admission only if the alien can demonstrate that "he or she possesses both the intent and the means to depart immediately . . . [and that]

---

[3] Gonzalez originally argued that he was eligible for adjustment of status and cancellation or removal. However, the Court found as a fact that Gonzalez would not have pursued any form of relief that would have precluded him from returning to Mexico immediately. Thus, Gonzalez cannot argue that he was prejudiced by any error relating to his eligibility for cancellation of removal and adjustments of status. Gonzalez proceeds solely on his argument regarding withdrawal of application. (See Def.'s Reply to the U.S.'s Second Supp. Resp., ECF No. 52, at 9 n.1.)

factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." 8 C.F.R. § 1240.1(d). There is no dispute that Gonzalez had the intent and means to depart the United States immediately. Gonzalez asserts that an IJ would have plausibly found it in the interest of justice to allow him to withdraw his application due to his family's citizenship, his ties to the United States, and other equitable factors.

Contrary to Gonzalez's argument, equitable consideration are not relevant to an IJ's decision. See United States v. Cisneros-Resendiz, 656 F.3d 1015, 1021 (9th Cir. 2011). Instead, "the relevant factors are those directly relating to the grounds that Congress has identified for an alien's inadmissibility, such as entry into the United States by means of fraud or conviction of specified crimes." Id. An IJ does not take into account equitable considerations, "but would consider the reasons for the alien's inadmissibility and whether those reasons establish that it would be 'in the interest of justice' to allow the alien to avoid a formal removal order." Id.

In United States v. Nava, No. 11cr1199 WGH, 2011 WL 4899954 (S.D. Cal. Oct. 13, 2011), a defendant challenged a similar removal order where an IJ failed to inform the defendant of his eligibility to withdraw his application for admission. The defendant was deemed inadmissible as an alien that knowingly "encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." Id. at *3. Although the defendant was a legal permanent resident and lacked any criminal record, the district court noted that the defendant failed to identify any factors related to his inadmissibility that would, in the interest of justice, allow the alien to avoid formal removal. Id. at *4. The court denied the defendant's motion, and the Ninth Circuit affirmed. See United States v. Nava, 544 F. App'x 737 (9th Cir. 2013) (citing In re Gutierrez, 19 I. & N. Dec. 562 (BIA 1988)).

//

Here, Gonzalez was deemed inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(C)(ii) for falsely claiming United States citizenship, and 8 U.S.C. § 1182(a)(7)(i)(I) for not having valid documents for entry into the United States. In short, Gonzalez falsely stated that he was a United States citizen and he was not in possession of a valid immigrant visa, reentry permit, or other valid entry document at the time he sought to enter. Gonzalez's only argument before the Court in support of his position is that the Court should take into account certain equitable factors, including his ties to the United States and the fact that his children and common-law wife are United States citizens.

However, like the defendant in Nava, Gonzalez fails to put forth any factors directly relating to the issue of inadmissibility. Rather, Gonzalez relies on equitable considerations that are appropriate in expedited removal proceedings but not removal proceedings before an IJ. See, e.g., Raya-Vaca, 771 F.3d at 1207 (analyzing equitable considerations as they pertain to plausibility of relief in an expedited removal proceeding, not an IJ removal proceeding); Barajas-Alvarado, 655 F.3d at 1090 (same); see also Exec. Office of Immigration Review, IJ Benchbook, 4.IV.C.1.d., 2001 WL 34634696 ("A motion to withdraw can be granted only upon a showing that it is in the interests of justice to permit withdrawal. Thus, a balancing of the equities is inappropriate in ruling on the motion."). Because Gonzalez has not alleged any factors relating to his inadmissibility, he has failed to establish a plausible basis for relief. Therefore, he has not shown he was prejudiced by the IJ's failure to advise him of the opportunity to withdraw his application for admission, and the 1999 IJ removal order remains valid.

### B.   2005 Administrative Removal Order

Gonzalez next argues that the 2005 administrative removal order is invalid because he was not convicted of an aggravated felony. As noted above,

Gonzalez was convicted in 2001 for possession for sale of cocaine in violation of California Health and Safety Code ("H&S") § 11351. Specifically, Gonzalez argues that § 11351 is overbroad and contains an indivisible *mens rea* element, thereby precluding a modified categorical approach.

### 1. *Applicable Law*

To determine whether a state conviction qualifies as a federal aggravated felony, courts employ the "categorical approach" set forth in Taylor v. United States, 495 U.S. 575 (1990). See Rendon v. Holder, 764 F.3d 1077, 1082 (9th Cir. 2014). When applying the categorical approach, courts "look only to the statutory definitions—i.e., the elements—of a defendant's prior offenses, and not to the particular facts underlying those convictions." Rendon, 765 F.3d at 1082-83. If the state statute has the same elements or is narrower than the federal crime, then the prior conviction can serve as a predicate for a federal aggravated felony. Id. at 1083. If the state statute sweeps more broadly, it cannot. Id.

Courts employ a modified categorical approach if the state statute is overbroad but divisible, meaning it "lists multiple, alternative elements and so effectively creates several different crimes." Id. The modified categorical approach "allows courts to look beyond the statutory text to a limited set of documents to determine the elements of the state offense of which the defendant was convicted when some alternative elements of the state crime would match the federal, generic crime, and other elements would not." Id. Here, Gonzalez's conviction under H&S § 11351 was deemed an aggravated felony under 8 U.S.C. § 1101, which defines an aggravated felony to include the "illicit trafficking in a controlled substance . . . including a drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B)

### 2. *H&S § 11351*

The Government does not contest that § 11351 is overbroad. However, the parties dispute whether § 11351 is divisible. Gonzalez argues that § 11351 is

1  indivisible as to the *mens rea* element, and therefore applying the modified
2  categorical approach would be inappropriate. The Court disagrees.
3      In United States v. Torre-Jimenez, 771 F.3d 1163 (9th Cir. 2014), the Ninth
4  Circuit addressed whether a prior conviction under § 11351 was a "drug
5  trafficking offense" under the Sentencing Guidelines. The court applied the
6  categorical approach and determined that, because § 11351 criminalized
7  possession of certain substances not covered by the Controlled Substances Act,
8  § 11351 "is categorically broader than the Guidelines definition of 'drug trafficking
9  offense.'" Id. at 1165. However, the court proceeded under the modified
10 categorical approach after it determined that § 11351 "is divisible with respect to
11 the type of controlled substance." Id. at 1167.
12     The Ninth Circuit reached a similar conclusion Padilla-Martinez v. Holder,
13 770 F.3d 825 (9th Cir. 2014), a case cited by Gonzalez. As in Torre-Jimenez, the
14 court in Padilla held that H&S § 11378 is divisible and that the modified
15 categorical approach was appropriate.[4] Padilla, 770 F.3d at 831 n.2. The court
16 noted that § 11378 was written in the disjunctive, and that California state law
17 treated the type of controlled substance as "a separate element in prosecuting
18 relevant drug offenses." Id.
19     Finally, in United States v. Escobar, 594 F. App'x 920 (9th Cir. 2014), the
20 appellant raised the same argument Gonzalez makes here: that a California drug
21 statute is indivisible as to intent. See Appellant's Opening Br. at 43-45, United
22 States v. Escobar, 594 F. App'x 920 (9th Cir. 2014) (No. 13-50454). Having
23 considered the argument, the Ninth Circuit nevertheless held that H&S § 11378
24 is divisible. Id. at 922; see also United States v. Escobar, No. 15-50228, 2016

---

[4] Section 11378 prohibits the possession for sale of controlled substances formerly classified as restricted dangerous drugs, while § 11351 involves controlled substances formerly classified as narcotics. Each section contains the language "person who possesses for sale." Compare Cal. Health & Safety Code § 11351, with Cal. Health & Safety Code § 11378.

WL 3434746, at *1 (9th Cir. June 17, 2016) ("In this second appeal, Escobar again argues that § 11378 is indivisible as to both drug type and intent . . . . Having rejected this argument in Escobar's prior appeal . . . we decline the invitation to revisit that ruling.")

In light of clear Ninth Circuit precedent, the Court declines to read into § 11351 a separate and indivisible *mens rea* element. Like the statute at issue in Padilla and Escobar, § 11351 penalizes persons who possess for sale a variety of controlled substances. As such, the statute is divisible in that it effectively creates several different crimes based on the type of controlled substance at issue. See Rendon, 764 F.3d at 1083. Gonzalez has not cited to any authority finding § 11351 indivisible as to intent, and the Ninth Circuit has explicitly rejected a similar argument made pursuant to § 11378. Therefore, the modified categorical approach applies where a defendant was convicted pursuant to H&S § 11351.

   3. *Modified Categorical Approach*

Under the modified categorical approach, the government bears the burden of proof to show, by clear and convincing evidence, that the state court conviction is a predicate offense. Medina-Lara v. Holder, 771 F.3d 1106, 1113 (9th Cir. 2014). The Court may look only to those documents listed in Shepard v. United States, 544 U.S. 13 (2005), which include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. at 16. Here, the Government submitted the First Amended Information, the abstract of judgment, the written guilty plea, and the state court docket. (See ECF No. 45-1, Exs. 2, 3; ECF No. 59-1, Exs. 1, 2, hereinafter "Conviction Record.")

The Conviction Record adequately establishes that Gonzalez pleaded guilty and was convicted of possessing cocaine for sale. Count 1 of the First Amended Information states, "[o]n or about May 5, 2000, FILIBERTO

GONZALEZ VILLANUEVA, in violation of Section 11351 of the Health and Safety Code (POSSESSION FOR SALE OF A CONTROLLED SUBSTANCE), a FELONY, did willfully and unlawfully possess for sale and purchase for sale a controlled substance, to wit: COCAINE." (ECF No. 45-1, at 4.) On page 2 of the guilty plea, Gonzalez wrote that, "[o]n May 5, 2000 in Orange County, I knowingly possessed for sale 142 grams of cocaine . . . ." (ECF No. 59-1, at 20.) The guilty plea is dated June 5, 2001. (See id.) The docket notes that Gonzalez pleaded guilty to Count 1 of the First Amended Information on June 5, 2001. (ECF No. 59-1, at 15.) Finally, the abstract of judgment states that Gonzalez was convicted on June 5, 2001, for violating § 11351. (ECF No. 45-1, at 8.)

The illicit trafficking of cocaine is considered an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(B). See also 21 U.S.C. § 802(6) (defining "controlled substance" as any schedule II drug); 21 U.S.C. § 812, sched. II(a)(4) (listing cocaine as a schedule II drug). As such, Gonzalez's California conviction for possessing cocaine for sale qualifies as an aggravated felony. The 2005 administrative removal is therefore valid.

## IV. CONCLUSION

For the reasons discussed above, the 1999 IJ removal order and the 2005 administrative removal order are valid. Defendant Filiberto Gonzalez-Villanueva's motions to dismiss pursuant to 8 U.S.C. § 1326(d) and motion for reconsideration are **DENIED**.

**IT IS SO ORDERED.**

Dated:  June 29, 2016

Barry Ted Moskowitz, Chief Judge
United States District Court